_____

**SO ORDERED,**

*[Signature: Katharine M. Samson]*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: December 17, 2019**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: BETTY J HILL                                              CASE NO. 19-50821-KMS
TIMMY L HILL

DEBTORS                                                                                  CHAPTER 13

### OPINION AND ORDER
### SUSTAINING OBJECTION TO CONFIRMATION AND VALUATION

This matter came on for hearing on the Objection to Confirmation and Valuation (ECF No. 24) by creditor FirstBank, successor to Clayton Bank & Trust. FirstBank asserts that the chapter 13 plan impermissibly proposes to pay FirstBank less than the replacement value of its collateral, a manufactured home located at 40 Opal Street, State Line, Mississippi. This matter is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(B),(K), and (L).

Based on the appraisals, expert testimony, and arguments at hearing, the Objection is sustained. But the Court rejects the value urged by FirstBank, holding instead that the value of the manufactured home is $47,400.

**FINDINGS OF FACT**

In October 2009, Debtor Timmy L. Hill borrowed $70,681 from Clayton Bank & Trust, now FirstBank, to buy a new manufactured home ("Home"). Retail Installment Cont. and Sec. Agreement, Cl. 14-1 at 13. In exchange, Hill granted Clayton Bank & Trust a security interest in the Home, perfected by certificate of title. *Id.* at 14, 16. The Hills live in the Home. *See* county tax record, ECF No. 35-1 at 19.

Approximately ten years after buying the Home, Hill and his wife filed this bankruptcy case. FirstBank filed a proof of secured claim for $68,196. *Id.* at 2. But the Hills propose to pay FirstBank only $18,000. ECF No. 15 at 3, 5.

**CONCLUSIONS OF LAW**

When a chapter 13 debtor intends to keep encumbered personal property and the secured creditor has objected to confirmation, the plan may nevertheless be confirmed by "cramming down" the claim to the present value of the collateral, paid over the life of the plan. 11 U.S.C. § 1325(a)(5)(B)(ii); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997). The value of the claim is based on the replacement value of the property. 11 U.S.C. § 506(a)(2). "With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." *Id.* It is undisputed that the Home is to be valued as personal property and that it was acquired for personal, family, or household purposes.

**I. FirstBank's Valuation**

At hearing, FirstBank offered the appraisal report and expert testimony of Robert Keck of R. Keck Enterprises LLC in Tennessee. Keck worked in quality assurance in the manufactured homes industry for thirty years before retiring and starting his own company to perform

2

manufactured home appraisals, inspections for the U.S. Department of Housing and Urban Development, and refurbishings. Trial Tr., ECF No. 40 at 4. Keck is certified in all fifty states by the Associated Appraisal College in South Carolina. *Id.* at 7. Over the course of his career, he inspected 67,000 homes at every phase of manufacture. *Id.*

Keck valued the Home using the National Appraisal System (NAS) with the National Automobile Dealers Association (NADA) price guide. As Keck described the method, "[Y]ou take a baseline [price] from the NADA, then you add in all the components, and all of the accessories. Then you deduct anything that's wrong or . . . worn out, needs repair, so forth, then you deduct that from the price," and the final figure is the value. *Id.* at 6.

Keck identified the Home as a 2008 Southern Sizzler/SS series manufactured by Southern Energy Homes. Keck Rep., ECF No. 35 at 2. The size of the Home was 2432 square feet, calculated by multiplying 32 feet of width by 76 feet of length. *Id.* at 7. Challenged about whether the Home's title showed the length as 72 feet instead of 76, Keck said that, if so, the Home would be worth approximately $3,000 less. ECF No. 40 at 14, 21-22. In Keck's calculation, the Home's dimensions included the covered porch that ran all the way across one end. *Id.* at 10.

Keck inspected the Home and determined it to be in average condition. *Id.* at 6. The Home needed minor repairs totaling $2445. ECF No. 35 at 9. Among other concerns, Keck reported that a tab of shingles had blown off the roof, the kitchen had what appeared to be a grease stain on the ceiling, hail had damaged the trim around some of the windows, and cabinet fronts needed to be refinished. *Id.*; ECF No. 40 at 9-10.

Factoring in a 97% multiplier for the Home's location in Mississippi and a 100% multiplier for its average condition, then adjusting downward for the cost of needed repairs and upward for

3

various components and accessories, Keck calculated the Home's replacement value as $53,900. ECF No. 35 at 4, 8.

## II. The Hills' Valuation

The Hills offered the appraisal report and expert testimony of Nick Crutcher of Appraisal Services in Hattiesburg. Crutcher is a residential appraiser certified by the state of Mississippi since 1997. ECF No. 40 at 23. He appraises residential homes, manufactured homes, and land throughout South Mississippi. *Id.* Crutcher appraises about five manufactured homes a month for lenders seeking to establish a home's value as collateral for a loan. *Id.* at 24-25.

Crutcher valued the Home by the market approach, in which he used the Multiple Listing Service (MLS) to find three sales of comparable manufactured homes in the local area. Crutcher Rep., ECF No. 35-1 at 6. The Home as Crutcher measured it was significantly smaller than what Keck calculated: 1876 square feet as opposed to 2432 square feet. ECF No. 35-1 at 5. Crutcher explained that he did not include the Home's porch, because it was not considered heated and cooled area; and he did not include the hitch, because when a home is appraised for a lender, the hitch has been removed. ECF No. 40 at 28.

As did Keck, Crutcher inspected the Home and determined it to be in average condition. ECF No. 40 at 25, 43. But where Keck saw only one tab missing from the roof, Crutcher saw at least a dozen shingles missing. *Id.* at 30. And the stain on the kitchen ceiling that Keck believed was grease, Crutcher believed was water, along with an additional stain on the ceiling of the laundry room. *Id.* Consequently, Crutcher believed the roof needed replacing at a cost of at least $3500. Id. at 30-31.

Crutcher appraised the Home as real property, not personal property. *Id.* at 37 ("I don't appraise personal property.") He valued the Home together with the land on which it sits. *Id.* at 44

4

("I'm not there to appraise just a manufactured home. . . . [T]he site goes with the manufactured home."). He did not consider retail sales of manufactured homes and did not talk to any manufactured home dealers. *Id.* at 46-47. He determined market value, not replacement value. *Id.* at 25. He valued the Home with the land at $18,000. *Id.* at 29.

### III. The Court's Valuation

"The Bankruptcy Code does not prescribe any particular method of valuing collateral, but instead leaves valuation questions to judges on a case-by-case basis." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 799 (5th Cir. 1997). As this Court has previously recognized, "[t]he bankruptcy court is not bound by valuation opinions or reports submitted by appraisers" and may: (1) "form its own opinion as to the value of property in bankruptcy proceedings"; (2) "accept an appraisal in its entirety"; or (3) "give weight only to those portions of an appraisal that assist the Court in its determination." *In re The Grind Coffee & Nosh, LLC,* No. 11-50011-KMS, 2011 WL 1301357, at *6 (Bankr. S.D. Miss. Apr. 4, 2011).

The Court rejects Crutcher's appraisal because he valued the Home as real property, whereas FirstBank's security interest is in the Home as personal property, without land. Although a manufactured home may become part of the real property when certain requirements are met,[1] there is no evidence those requirements have been met here. And notwithstanding their own expert's testimony, the Hills implicitly acknowledge that the Home is personal property by seeking cramdown under § 506(a)(2), which they could not do if the Home were real property. *See* 11 U.S.C. § 1322(b)(2) (prohibiting modification of "a claim secured only by a security interest in

---

[1] In Mississippi, a manufactured home may become part of the real property to which it is affixed if the owner of the home also owns the real property and meets the requirements for permanently retiring the home's title, including a statement that the owner intends the home to be "an immovable fixture and a permanent part of the real property." Miss. Code Ann. 63-21-30(1)(i)(ii).

5

real property that is the debtor's principal residence."). Because the Home is personal property, the valuation standard is replacement value. *See* 11 U.S.C. § 506(a)(2). Consequently, the market value Crutcher offers is irrelevant.

When determining the replacement value of a manufactured home as personal property, this Court and others have favored the use of the National Appraisal System (NAS) with the National Automobile Dealers Association (NADA) price guide. *In re Rucker*, No. 17-04552-NPO, 2018 WL 3244458, at *4 (Bankr. S.D. Miss. July 3, 2018) (stating that "the NAS's NADA Guide is the favored valuation method both in the Southern District of Mississippi and in other jurisdictions" and collecting cases). The NAS/NADA method uses "a formulaic and standardized" approach to generate a value that courts use as a starting point, which may then be adjusted up or down based on the evidence in a particular case. *In re Edwards*, No. 17-02821-5-SWH, 2017 WL 6754026, at *7 (Bankr. E.D.N.C. Dec. 29, 2017).

Consistent with these decisions, the Court approves Keck's valuation, but with adjustments. Finding Crutcher's testimony relevant and credible as to the condition of the roof, the Court decreases Keck's valuation by $3500. As to the size of the Home, the Court finds the dimensions to be 32 by 72 feet, as shown on the Retail Installment Contract and Security Agreement, Cl. 14-1 at 13, and consequently decreases Keck's valuation by an additional $3000. The replacement value of the Home is therefore $47,400.

## ORDER

**IT IS THEREFORE ORDERED** that the Objection to Confirmation and Valuation is **SUSTAINED**, and

**FURTHER ORDERED** that the value of the Home is $47,400.

*##END OF ORDER##*